UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X

SEAN ELDRIDGE, SHANE SMITH, NATHANIEL : COPELAND, SEAN REED AND ADOLPHUS MCCLEAN, : Individually, and on behalf of all others similarly situated, :

                                :

                                :

                            Plaintiffs, :

                 - against - :

                                :

GREYHOUND LINES, INC., FLIX SE, FLIX NORTH : AMERICA, INC., FIRSTGROUP, PLC, and FIRSTGROUP : SERVICES, INC., :

                                :

                           Defendants. :

------------------------------------------------------------------------X

Civil Action No.:

**COMPLAINT**
**(Collective and Class Action)**

**Jury Trial Demanded**

Representatives Plaintiffs Sean Eldridge ("Eldridge"), Shane Smith ("Smith"), Nathaniel Copeland ("Copeland"), Sean Reed ("Reed") and Adolphus McClean ("McClean"), on behalf of themselves and all others similarly situated, upon personal knowledge as to themselves and upon information and belief as to other matters, by and through their attorneys Boyd Richards Parker & Colonnelli, P.L., complaining of the Defendants, Greyhound Lines, Inc., Flix Se, Flix North America, Inc., and FirstGroup, PLC, and FirstGroup Services, Inc.(collectively the "Defendants" or "Greyhound"), respectfully allege as follows:

## NATURE OF THE ACTION

1.      Plaintiffs allege on behalf of themselves, and a class of other similarly-situated current and former non-exempt, hourly employees who worked for the Defendants between September 18, 2019[1] and the date of final judgment of this matter (the "Primary Class") that they

---

[1]      This class period is due to Governor Cuomo's Executive Order that tolled the applicable statute of limitations during the COVID-19 pandemic for 228 days, as well as the Tolling Agreement entered into between the Parties.

are: (i) entitled to unpaid wages from Defendants for working more than forty hours in a week and not being paid an overtime rate of at least 1.5 times the regular rate for each and all such hours over forty in a week; and (ii) entitled to maximum liquidated damages, interest and attorneys' fees pursuant to the Fair Labor Standards Act, 29 U.S.C. §§201 et seq. including 29 U.S.C. §216(b).

2. Plaintiffs further complain on behalf of themselves and a class of other similarly situated current and former non-exempt, hourly employees who worked for the Defendants in New York between September 17, 2016[2] and the date of final judgment in this matter (the "New York Class"), pursuant to the Fed. R. Civ. Proc. 23, that they are: (i) entitled to unpaid gap time and unpaid overtime wages from Defendants for working more than forty hours in a week and not being paid an overtime rate of at least 1.5 times their regular rate for each and all such hours over forty in a week; and (ii) entitled to liquidated damages, costs, interest and attorneys' fees, pursuant to the New York Minimum Wage Act ("NYMWA"), N.Y. Lab. Law §§ 650 et seq., ("NYLL") including NYLL § 663, and the regulations thereunder – 12 NYCRR § 142-2.2 and 23 NYCRR §142-2.4.

3. Plaintiffs and the New York Class are also entitled to recover compensation for not receiving pay rate notices and accurate wage statements required by § NYLL 195(3), under Article 6 of the New York Labor Law, and attorneys' fees pursuant to Section 198 of the New York Labor Law.

4. Similarly, a second class exists, and Plaintiffs complain on behalf of themselves and a class of other similarly situated manual laborers employed by Defendants in its New York locations between September 17, 2016[3] and the date of final judgment in this matter, including but not limited

---

2    This class period is due to Governor Cuomo's Executive Order that tolled the applicable statute of limitations during the COVID-19 pandemic for 228 days, as week as the Tolling Agreement entered into between the Parties.

3    This class period is due to Governor Cuomo's Executive Order that tolled the applicable statute of limitations during the COVID-19 pandemic for 228 days.

to Customer Service Agents, baggage agents and leads, ticketing personnel, mechanics, and cleaning/maintenance workers (the "Manual Laborer Class"), that they are entitled to recover one-hundred percent of any wages which were untimely paid, pursuant to Article 6 of the NYLL, including Section 191(1)(a), and are also entitled to liquidated damages, interest and attorneys' fees pursuant to Section 198 of the New York Labor Law.

5.    Plaintiff Eldridge is further entitled to secure declaratory, compensatory, and punitive damages to remedy Defendants' commission of unlawful retaliation for Eldridge's assertion of his protected rights under federal and state employment laws under 29 U.S.C. § 215(a)(3), and is further entitled to attorneys' fees and interest.

## JURISDICTION

6.    This Court has original jurisdiction pursuant to 28 U.S.C. §§1331, 1332(d), and 1337 because the amount in controversy against Defendants exceeds $5,000,000 exclusive of interest and costs. This Court has supplemental jurisdiction over the New York State law claims pursuant to 28 U.S.C. § 1367. In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. §216(b).

7.    This Court has personal jurisdiction over the Defendants pursuant to New York Civil Practice Law and Rules § 301 in that, *inter alia*, Defendants reside and/or transact business within this State, employed Plaintiffs and those similarly situated within the State of New York, and otherwise engaged in conduct that allows for the exercise of jurisdiction as permitted by the Constitution of the United States and the laws of the State of New York, and accordingly may be served with process pursuant to Fed. R. Civ. P. 4(h)(1).

8.    Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§1391(b) and/or 29 U.S.C. §216(b) because Defendants transact (or transacted) business during the

relevant time period, and have agents in the Southern District, and because a substantial part of the events or omissions giving rise to Plaintiffs' individual claims, and the claims of the New York Class and Manual Laborer Class occurred in the Southern District.

9.    This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§2201 and 2202.

## THE PARTIES

10.    Plaintiff Eldridge is an adult, over eighteen years old, who currently resides in the State of New York, New York County and is a covered employee within the meaning of the NYLL and FLSA.

11.    Plaintiff Smith is an adult, over eighteen years old, who currently resides in the State of New York, New York County and is a covered employee within the meaning of the NYLL and FLSA.

12.    Plaintiff Copeland is an adult, over eighteen years old, who currently resides in the State of Pennsylvania, Monroe County, and is a covered employee within the meaning of the NYLL and FLSA.

13.    Plaintiff Reed is an adult, over eighteen years old, who currently resides in the State of New York, Bronx County, and is a covered employee within the meaning of the NYLL and FLSA.

14.    Plaintiff McClean is an adult, over eighteen years old, who currently resides in the State of New York, Queens County, and is a covered employee within the meaning of the NYLL and FLSA.

15.    Upon information and belief, and at all times relevant herein, Defendant Greyhound Lines, Inc., is a foreign for-profit corporation, incorporated in Delaware, with corporate headquarters

located at 15110 North Dallas Parkway, Suite 600, Dallas, Texas 75248.

16.     Upon information and belief, Defendant Greyhound Lines, Inc. transacted business in the State of New York on a regular basis, including but not limited to, the business transacted by way of Greyhound's intercity bus services.

17.     Upon information and belief, Defendant Greyhound Lines, Inc. has committed tortious acts, as outlined herein, both within and outside of New York State, causing injuries to persons both within and outside of New York State.

18.     Upon information and belief, and at all times relevant herein, Defendant Flix Se is an international for-profit corporation, with corporate headquarters located at Friedenheimer Bruecke 16 Muenchen, BY 80639 Germany.

19.     Upon information and belief, Defendant Flix Se transacted business in the State of New York on a regular basis, including but not limited to, the business it transacted by way of Greyhound's intercity bus services.

20.     Upon information and belief, Defendant Flix Se has committed tortious acts, as outlined herein, both within and outside of New York State, causing injuries to persons both within and outside of New York State.

21.     Upon information and belief, and at all times relevant herein, Defendant Flix North America, Inc. is a foreign for-profit corporation, with corporate headquarters located in Dallas, Texas.

22.     Upon information and belief, Defendant Flix North America, Inc. transacted business in the State of New York on a regular basis, including but not limited to, the business it transacted by way of Greyhound's intercity bus services.

23.     Upon information and belief, Defendant Flix North America, Inc. has committed

tortious acts, as outlined herein, both within and outside of New York State, causing injuries to persons both within and outside of New York State.

24.     Upon information and belief, and at all times relevant herein, Defendant FirstGroup, PLC is an international public limited company, with company headquarters located at 395 King Street, Aberdeen, Scotland.

25.     Upon information and belief, Defendant FirstGroup, PLC transacted business in the State of New York on a regular basis, including but not limited to, the business it transacted by way of Greyhound's intercity bus services.

26.     Upon information and belief, Defendant FirstGroup, PLC has committed tortious acts, as outlined herein, both within and outside of New York State, causing injuries to persons both within and outside of New York State.

27.     Upon information and belief, and at all times relevant herein, Defendant FirstGroup Services, Inc. is a foreign for-profit corporation, incorporated in Delaware.

28.     Upon information and belief, Defendant FirstGroup Services, Inc. transacted business in the State of New York on a regular basis, including but not limited to, the business it transacted by way of Greyhound's intercity bus services.

29.     Upon information and belief, Defendant FirstGroup Services, Inc. has committed tortious acts, as outlined herein, both within and outside of New York State, causing injuries to persons both within and outside of New York State.

## STATEMENT OF FACTS

30.     Upon information and belief, and at all relevant times herein, Defendant Greyhound Lines, Inc. owned and operated the largest intercity bus service in North America.

31.     Upon information and belief, FirstGroup, PLC was the owner of Greyhound Lines,

Inc. until on or about October 21, 2021, at which time it sold portions of Greyhound Lines, Inc., to Flix Se.

32.    Upon information and belief, during the relevant time period through October 21, 2021, FirstGroup PLC, in its capacity as the parent company to Greyhound Lines, Inc., exercised joint control and decision-making power over the terms and conditions of the Representative Plaintiffs', as well as the Collective and Class members' employment, including setting the wage policies and practices that are the subject of this Complaint, either as joint employers of Greyhound Lines, Inc. or as a single integrated enterprise.

33.    Upon information and belief, Greyhound Lines, Inc. and FirstGroup PLC operated either through unified operations or common control, and for a common business purpose, that being for purposes of operating Greyhound's intercity bus services.

34.    Upon information and belief, during the relevant time period through October 21, 2021, FirstGroup Services, Inc. exercised joint control and decision-making power with Greyhound Lines, Inc. over the terms and conditions of the Representative Plaintiffs', as well as the Collective and Class members' employment, including setting the wage policies and practices that are the subject of this Complaint, either as joint employers of Greyhound Lines, Inc. or as a single integrated enterprise.

35.    Upon information and belief, Greyhound Lines, Inc. and FirstGroup Services Inc. operated either through unified operations or common control, and for a common business purpose, that being for the purposes of operating Greyhound's intercity bus services.

36.    Upon information and belief, since October 21, 2021 and July 21, 2022, respectively, Flix Se and Flix North America, Inc. exercised joint control and decision-making power, with Greyhound Lines, Inc., over the terms and conditions of the Plaintiffs', as well as the Collective and

Class members' employment, including setting the wage policies and practices that are the subject of this Complaint, either as joint employers of Greyhound Lines, Inc. or as a single integrated enterprise.

37.     Upon information and belief, and at all relevant times herein, the Defendants, as joint employers and/or as a single integrated enterprise, owned and operated charter bus services, commuter bus services, and package delivery services from stations and depots across the country, including the New York City Port Authority (the "Port Authority").

38.     At all times relevant herein, the Defendants jointly employed at least several dozen employees at the Port Authority during the class period.

39.     Upon information and belief, Greyhound operates from over one-hundred stations both in New York State, and across the Country, with employees working at all stations.

40.     At all times relevant herein, Defendants jointly employed Plaintiff Eldridge as an hourly employee, and his last regular rate of pay was about $17.58 an hour. However, at some time during his employment, Defendants terminated its policy of paying Plaintiff Eldridge weekly and instituted a bi-weekly pay policy, in contravention of NYLL §191(1)(a)(ii).

41.     Defendants employed Eldridge from on or about November 17, 2004, until on or about September 29, 2022, when he was retaliatorily terminated from his position as a baggage lead, a manual labor position.

42.     At all times relevant herein, Defendants jointly employed Plaintiff Smith as an hourly employee, and his last regular rate of pay was about $17 an hour. However, at some time during his employment, Defendants terminated its policy of paying Plaintiff Smith weekly and instituted a bi-weekly pay policy, in contravention of NYLL § 191 (1)(a)(ii).

43.     Defendants employed Smith from approximately 2014 until on or about July 2021,

8

when he was terminated from his position as a Customer Service Agent ("CSA"), a manual labor position.

44.     At all times relevant herein, Defendants jointly employed Plaintiff Copeland as an hourly employee, and his last regular rate of pay was about $17 an hour. However, at some time during his employment, Defendants terminated its policy of paying Plaintiff Copeland weekly and instituted a bi-weekly pay policy, in contravention of NYLL § 191 (1)(a)(ii).

45.     Defendants employed Copeland from approximately 2006 until on or about March 2017, when he was terminated from his position as a Customer Service Agent ("CSA"), a manual labor position.

46.     At all times relevant herein, Defendants jointly employed Plaintiff Reed as an hourly employee, and his last regular rate of pay was about $17 an hour. However, at some time during his employment, Defendants terminated its policy of paying Plaintiff Reed weekly and instituted a bi-weekly pay policy, in contravention of NYLL § 191 (1)(a)(ii).

47.     Defendants employed Reed from approximately 2012 until on or about January 2023, when he was terminated from his position as a Customer Service Agent ("CSA"), a manual labor position.

48.     At all times relevant herein, Defendants jointly employed Plaintiff McClean as an hourly employee, and his last regular rate of pay was about $17 an hour. However, at some time during his employment, Defendants terminated its policy of paying Plaintiff McClean weekly and instituted a bi-weekly pay policy, in contravention of NYLL § 191 (1)(a)(ii).

49.     Defendants employed McClean from approximately 1989 until on or about November 1, 2023 when he retired from his position as a Customer Service Agent ("CSA"), a manual labor position.

50.     As a result of Defendants' bi-weekly pay policy, Plaintiffs and the Manual Laborer Class members - - a class of employees who received minimum wage or slightly above minimum wage - - suffered actual harm as they were unable to spend their earned pay when they were entitled to receive it, causing an undue hardship on them.

51.     Eldridge's responsibilities included but were not limited to physical labor involving standing on his feet, checking passports, checking tickets, assisting customers who were entering the buses, and assisting with luggage for more than twenty-five percent of his working time.

52.     Smith's responsibilities included, but were not limited to, physical labor involving standing on his feet, checking passports, checking tickets, assisting customers who were entering the buses, and assisting with luggage for more than twenty-five percent of his working time.

53.     Copeland's responsibilities included, but were not limited to, physical labor involving standing on his feet, checking passports, checking tickets, assisting customers who were entering the buses, and assisting with luggage for more than twenty-five percent of his working time.

54.     Reed's responsibilities included, but were not limited to, physical labor involving standing on his feet, checking passports, checking tickets, assisting customers who were entering the buses, and assisting with luggage for more than twenty-five percent of his working time.

55.     McClean's responsibilities included, but were not limited to, physical labor involving standing on his feet, checking passports, checking tickets, assisting customers who were entering the buses, and assisting with luggage for more than twenty-five percent of his working time.

56.     At all times relevant herein, the Defendants had a policy and practice of requiring Plaintiffs and other similarly situated employees to clock out each day for a meal, lunch and/or other break period. However, due to the demands of the job, Plaintiffs and the Primary Class did not receive a *bona fide* meal break within the meaning of the FLSA and NYLL, particularly as the

employees were always "on call" and regularly required to perform tasks necessary for the job during their meal/lunch period.  As a result, Plaintiffs and the Primary Class are owed overtime wages for approximately 3 to 5 overtime hours or more each week during their employment.

57.    At all times relevant herein, Plaintiffs worked five days per week, totaling about 45 hours or more each week.

58.    A more precise statement of the hours and wages may be made when Plaintiffs obtain the wage and time records that Defendants were required to keep under the FLSA and NYLL.

59.    At all times relevant herein, in addition to the failure to be compensated for meal breaks, for the time Plaintiffs were employed by the Defendants, the Defendants willfully failed to pay Plaintiffs an overtime rate of at least 1.5 times their regular rate of pay for all hours worked in excess of forty hours in a week.

60.    At all times relevant herein, Defendants did not provide Plaintiffs and the putative New York Class members with pay rate notices required by NYLL §195(3), nor did they provide accurate wage statements as they did not contain all hours worked by Plaintiffs nor all wages earned, among other deficiencies.

61.    As a result of the Defendants' policy of failing to provide proper wage notices and wage statements, Plaintiffs and the New York Class members were harmed, as such failure deprived them of the ability to contest Defendants' wage calculations, and also delayed providing proper compensation to Plaintiffs and the New York Class members, low wage employees who were paid at or just slightly above minimum wage.

62.    By way of example, Defendants' failure to provide proper wage notices and wage statements deprived Plaintiffs and the New York Class members of notice to which they were entitled, regarding their proper overtime rate and the frequency of pay, thereby delaying Plaintiffs'

and the New York Class members' claims asserted herein. As a result, Plaintiffs and the New York Class members are now limited to the FLSA and NYLL statute of limitations periods, even though their claims extend past such limitations periods.

63.    As a result, Plaintiffs and the New York Class members have suffered actual monetary injuries due to Defendants' statutory violations.

64.    Upon information and belief and at all times relevant herein, Defendants had annual revenues and/or expenditures in excess of $500,000.

65.    Upon information and belief and at all times relevant herein, Defendants are all foreign entities to New York State.

66.    Upon information and belief, and at all times relevant herein, some putative class members reside outside of the State of New York, including Plaintiff Copeland.

67.    Upon information and belief and at all times relevant herein, the Defendants conducted business with companies outside the State of New York.

68.    At all times relevant herein and upon information and belief, the Defendants utilized goods and materials that moved through interstate commerce.

69.    At all times relevant herein, the Defendants conducted business with vendors and other businesses outside the State of New York.

70.    The Defendants, as a regular part of their business, made tax payments and other payments to agencies and entities outside the State of New York.

71.    The Defendants, as a regular part of their business, engaged in credit card transactions involving banks and other institutions outside the State of New York.

72.    At all times applicable herein and upon information and belief, the Defendants utilized the instrumentalities of interstate commerce such as the United States mail, electronic mail,

the internet, and telephone systems.

73.    Upon information and belief, and at all relevant times herein, Defendants failed to display federal and state minimum wage/overtime posters as required by 29 § CFR 516 and 12 § NYCRR 142-2.8.

74.    Upon information and belief, and at all relevant times herein, Defendants failed to notify Plaintiffs of their federal and state minimum wage and overtime rights and failed to inform Plaintiffs that they could seek enforcement of such rights through the government enforcement agencies.

75.    The nature of the Defendants' violations of Plaintiffs' rights have been performed on a continuing basis, spanning past any statutory limit.

<u>**Retaliatory Termination**</u>

76.    Aware of the impropriety of the Defendants' overtime/mealtime policy, Plaintiff Eldridge complained several times to the Defendants' New York Human Resources Manager, Gerard Norman, that he was not properly being compensated for work performed above his forty hours. Plaintiff Eldridge's complaints were never addressed.

77.    Plaintiff Eldridge last complained of this overtime issue in or around April 2022, at which time he was told he would not be getting paid any overtime, but he was not provided any reason.

78.    On or about September 29, 2022, Defendants terminated Plaintiff Eldridge, on the pretextual basis that the baggage lead role was being phased out. However, Plaintiff Eldridge was the only baggage lead who was terminated.

79.    Plaintiff Eldridge's termination came as a direct and correlated retaliation for his complaints to Defendants regarding their failure to pay overtime.

13

## COLLECTIVE ACTION ALLEGATIONS

80.     Plaintiffs have consented to be part of this action by bringing this lawsuit pursuant to 29 U.S.C. § 216(b), individually and as a collective action on behalf of all persons similarly situated and proximately damaged by Defendants' conduct. The Collective, of which Plaintiffs are members, is composed of the Primary Class.

81.     Plaintiffs desire to pursue their claims on behalf of themselves and any individuals who opt-in to this action pursuant to 29 U.S.C. § 216(b).

82.     At all times relevant to this action, Plaintiffs and those similarly situated, were employed by the Defendants within the meaning of the FLSA – 29 §§ U.S.C. 201 et Seq.

83.     Plaintiffs bring this action individually and as a class action on behalf of the Primary Class, those which are similarly situated and proximately damaged by Defendants' conduct.

84.     Plaintiffs and the putative Collective are "similarly situated", as that term is used in 29 U.S.C. §216(b), because, *inter alia,* all such individuals worked pursuant to Defendants' previously described common pay practices which failed to compensate employees their full and legally earned overtime premium for hours worked over forty (40) during the workweek.

85.     At all relevant times, the Defendants are and have been aware of the requirements to pay Plaintiffs and the Collective for those total hours worked, and at one and one-half times their regular rates of pay for all hours worked each workweek over forty hours.

86.     The similarly situated employees are known to Defendants, are readily identifiable, and may be located through Defendants' business records.

87.     Resolution of this action requires inquiry into common facts, including, *inter alia,* Defendants' common compensation, timekeeping and payroll practices.

88.     Plaintiffs and all similarly situated employes who elect to participate in this action

14

seek unpaid overtime compensation, an equal amount of liquidated damages, interest, attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

89.      Defendants employ and have previously employed many Collective members. These similarly situated employees may be readily notified of this action through direct U.S. mail and/or other appropriate means and allowed to opt into it pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their claims for overtime compensation, liquidated damages, interest, attorneys' fees and costs under the FLSA.

## CLASS ACTION ALLEGATIONS

90.      The named Plaintiffs have consented to be part of this action by the filing of this action on their behalf and with their consent.

91.      Plaintiffs bring this action individually and as a class action on behalf of all persons similarly situated and proximately damaged by Defendants' conduct, including, but not necessarily limited to, the Primary Class, New York Class, and Manual Laborer Class.

### The Primary Class

92.      The Primary Class members worked more than forty hours in a week and were not paid at an overtime rate of at least 1.5 times their regular rate for each and all hours worked in excess of forty hours in a week.

93.      This action claims that the Defendants have violated the wage and hour provisions of the FLSA by depriving Plaintiffs and other similarly situated of lawful wages. Upon information and belief, there are many similarly situated current and former employees of Defendants who have been underpaid in violation of the FLSA and who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join this lawsuit.

94.      At all relevant times, the Defendants are and have been aware of the requirements to

15

pay Plaintiffs and the Primary Class one and one-half times their regular rates of pay for all hours worked each workweek above forty.  However, the Defendants chose not to do so.

95.    The Defendants failed to pay Plaintiffs and the Primary Class for time worked per workweek above forty hours in violation of the FLSA.

96.    The Primary Class is readily ascertainable, such information being in the possession and control of the Defendants.

97.    Although the precise number of the Primary Class members is unknown, and facts on which the calculation of that number is based are presently within the sole control of the Defendants, upon information and belief, there are several hundred members of the class during the class period.

98.    The class definition will be refined as is necessary, including after discovery if necessary, and the class would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join this lawsuit.

99.    At all times relevant to this action, Plaintiffs and all those similarly-situated, were employed by the Defendants within the meaning of the FLSA – 29 §§ U.S.C 201 et Seq.

100.    Upon information and belief, and at all times relevant to this action, Plaintiffs, and all those similarly-situated, were engaged in commerce and/or in the production of goods for commerce and/or the Defendants constituted an enterprise(s) engaged in commerce within the meaning of the FLSA including 29 U.S.C. § 207(a).

101.    Upon information and belief and at all times relevant herein, the Defendants transacted commerce and business in excess of $500,000.00 annually or had revenues and/or expenditures in excess of $500,000.00 annually.

102.    Plaintiffs and all similarly situated employees who elect to participate in this action seek unpaid overtime compensation, an equal amount of liquidated damages, and prejudgment

interest, attorneys' fees and costs pursuant to 29 § U.S.C. 216(b).

## The New York Class and Manual Laborers Class

103.    The New York Class members: (a) were required to work off-the-clock, were not compensated for that time, and are entitled to their regular rate of pay for gap time, pursuant to NYLL § 663; (b) were entitled to be paid overtime wages from Defendants for working more than forty hours in a week, but who were not paid an overtime rate of at least 1.5 times the regular rate for each and all such hours over forty in a week, pursuant to NYLL § 663; and (b) did not receive pay rate notices and accurate wage statements, required by NYLL 195(3).

104.    The Manual Laborer Class members were entitled to but did not receive weekly pay within seven calendar days after the end of the week in which the wages were earned.

105.    The Primary Class members, as well as the New York Class and Manual Laborer Class Members, are readily ascertainable. The number and identity of the classes' members are determinable from the Defendants' records. The positions held, and nature and extent of certain unlawful deductions from wages are also determinable from the Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants' records.  Notice can be provided by means permissible under Fed. R. Civ. P. 23.

106.    The Defendants, their officers, and directors are excluded from the Classes, as well as all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Class.

107.    This action has been brought and may properly be maintained as a Class action under Fed. R. Civ. P. 23 because there is a well-defined community of interest in the litigation and the proposed Classes are easily ascertainable:

(a) Numerosity: A class action is the only available method for the fair and efficient adjudication of this controversy. The members of the classes are so numerous that joinder of all members is impractical, if not impossible. Although the precise number of the members is unknown, and facts on which the calculation of those numbers are based are presently within the sole control of Defendants, upon information and belief, there are over 100 members of both and/or each class during the class period. Membership in the various classes will be determined upon analysis of employee and payroll records, among other records maintained by Defendants.

(b) Commonality: The Representative Plaintiffs and the various classes share a community of interests in that there are numerous common questions and issues of fact and law which predominate over any questions and issues solely affecting individual members, thereby making a class action superior to other available methods for the fair and efficient adjudication of the controversy. Consequently, class certification is proper under Fed.R.Civ.P. 23(b)(3). For example, the Defendants' practices and policies of failing to comply with New York Labor Law requirements pertaining to wage notices and pay statements, as alleged above, applies to all members of the New York Class, and the relief demanded (including, *inter alia*, the demand for injunctive and declaratory relief) affects the entire class. Similarly, the Defendants' unlawful wage policies and practices are applicable class-wide and involve common legal and factual issues.

(c) Typicality: The Representative Plaintiffs' claims are typical of the claims of the various classes. The Representative Plaintiffs and all members of the various classes sustained injuries and damages arising out of and caused by Defendants' common course of conduct in violation of state and federal law, as alleged herein. All of the class members were subject to

the same corporate practices of Defendants of failing to pay overtime compensation; untimely pay; violations of NYLL §195(3) by failing to issue accurate wage statements in the primary language of employees that correctly identified the name of the employer, address of employer, rates of pay or basis thereof, regular hourly rate, number of overtime hours worked; and violations of NYLL §195(1) by failing to provide to employees, upon hiring, a written notice in English and the employee's primary language setting forth the employee's rates of pay and basis thereof, the name of the employer, physical address of the employer's business, names used by the employer, and other legally-mandated disclosures.

(d) Superiority of Class Action: Since the damages suffered by individual Class Members, while not inconsequential, may be relatively small, the expense and burden of individual litigation by each member makes, or may make it, impractical for Class Members to seek redress individually for the wrongful conduct alleged herein. Should separate actions be brought or be required to be brought by each individual Class Member, the resulting multiplicity of lawsuits would cause undue hardship and expense for the Court and the litigants. The prosecution of separate actions would create a risk of inconsistent rulings, which might be dispositive of the interests of other Class Members who are not parties to the adjudications and/or may substantially impede their ability to adequately protect their interests. This risk is particularly applicable here, in light of the demand herein for declaratory and injunctive relief relating to NYLL § 195(1) and (3). Moreover, the Representative Plaintiffs are informed and believe, and based thereon alleges, that Defendants, have acted and refused to act on grounds generally applicable to all claims, thereby making appropriate injunctive and monetary relief for all members of each class. Consequently, class certification is proper under Fed.R.Civ.P. 23(b)(2).

19

(e) Adequacy of Representation: The Representative Plaintiffs in this class action are adequate representatives of the New York and Manual Laborer Classes, in that the Representative Plaintiffs' claims are typical of those of the New York and Manual Laborer Classes and the Representative Plaintiffs have the same interests in the litigation of this case as the Class Members. The Representative Plaintiffs are committed to vigorous prosecution of this case, and has retained competent counsel, experienced in employment litigation of this nature, who has demonstrated diligence in investigating the facts relevant to the claims of the Representative Plaintiffs and putative Class Members. The Representative Plaintiffs are not subject to any individual defenses unique from those conceivably applicable to the Class as a whole.

108.    Upon information and belief, Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct retaliation or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide Rule 23 Class Members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while reducing these risks.

109.    Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

110.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour and frequency of pay litigation where individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against large entities such as the Defendants, and in light of the large number of

putative class members.

111.     Should separate actions be brought or be required to be brought by each individual Class Member, the resulting multiplicity of lawsuits would also cause undue hardship and expense for the Court and the litigants. The prosecution of separate actions would create a risk of inconsistent rulings, which might be dispositive of the interests of other Class Members who are not parties to the adjudications and/or may substantially impede their ability to adequately protect their interests. Consequently, class certification is proper under Fed.R.Civ.P. 23(b)(2).

**AS AND FOR A FIRST CAUSE OF ACTION**
Fair Labor Standards Act - 29 U.S.C §§ 201 et Seq. (Overtime)
(Brought on behalf of Plaintiffs and the Primary Class)

112.     Plaintiffs allege on behalf of themselves and the Primary Class, pursuant to 29 U.S.C. § 216(b), and incorporate by reference the allegations in paragraphs 1 through 111 above as if set forth fully and at length herein.

113.     This claim is brought as a collective and class action on behalf of the named Plaintiffs and the Primary Class.

114.     Defendants violated the FLSA by depriving Plaintiffs and the Primary Class of their lawful wages. Specifically, the Primary Class members worked more than forty hours in a week and were not paid at an overtime rate of at least 1.5 times their regular rate for each and all hours worked in excess of forty hours in a week.

115.     At all relevant times, Defendants were, or should have been, aware of the requirements to pay Plaintiffs and the Primary Class: (a) federal minimum wage; and (b) one and one-half times their regular rates of pay for all hours worked each workweek above forty. However, Defendants chose not to do so.

**116.**     At all times relevant herein, Defendants failed and willfully failed to pay Plaintiffs

and the Primary Class, overtime compensation at rates not less than 1.5 times their regular rate of pay for each and all hours worked in excess of forty hours in a work week, in violation of 29 U.S.C. § 207.

117.    Due to Defendants' FLSA violations, Plaintiffs and the Primary Class are entitled to recover from Defendants their unpaid overtime wage compensation, plus maximum liquidated damages, attorney's fees, and costs of the action, pursuant to 29 U.S.C. § 216(b).

<u>**AS AND FOR A SECOND CAUSE OF ACTION**</u>
§§ NYLL 633, 650 et Seq. (Gap Time and Overtime)
(Brought on behalf of Plaintiffs and the New York Class)

118.    Plaintiffs allege the following, on behalf of themselves and the New York Class, and incorporate by reference the allegations in paragraphs 1 through 117 above as if set forth fully and at length herein.

119.    Plaintiffs and the New York Class are entitled to recover their straight time wages for all time worked off-the-clock, for which they were not compensated.

120.    Plaintiff and the New York Class are further entitled to recover their unpaid overtime wages from Defendants for working more than forty hours in a week and not being paid an overtime rate of at least 1.5 times their regular rate of pay for each and all such hours over forty in a week.

121.    The NYMWA defines an employer as "any individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons acting as employer."

122.    At all relevant times, Defendants were, or should have been, aware of the requirements to pay Plaintiffs and the New York Class for off-the-clock work and to pay them one and one-half times their regular rates of pay for all hours worked each workweek above forty. However, Defendants chose not to do so.

22

123.    Exhaustion of remedies is not required before bringing a claim for unpaid wages and overtime pursuant to the NYMWA. See NYLL § 663(1).

124.    At all times relevant herein, Defendants failed and willfully failed to pay Plaintiffs and the New York Class compensation at their regular hourly rate for off-the-clock work, and overtime compensation at rates not less than 1.5 times their regular rate of pay for each and all hours worked in excess of forty hours in a work week, in violation of NYMWA, NYLL §§ 650 et seq., including NYLL § 663, and the regulations thereunder – 12 NYCRR § 142-2.2.

125.    Due to Defendants' NYLL violations, Plaintiffs, and the New York Class, are entitled to recover from Defendants, their unpaid gap time, overtime, maximum liquidated damages, prejudgment interest, and attorney's fees and costs, pursuant to NYLL § 663(1).

**AS AND FOR A THIRD CAUSE OF ACTION**
New York Labor Law – Failure to Pay Timely Wages
(Brought on behalf of Plaintiffs and the Manual Laborers Class)

126.    Plaintiffs allege on behalf of themselves and all others similarly situated as Manual Laborers Class members and incorporate by reference the allegations in paragraphs 1 through 125 above as if set forth fully and at length herein.

127.    The timely payment of wages pursuant to provision NYLL §191 and its supporting regulations apply to Defendants, as for-profit corporations, and protect Plaintiffs and the Manual Laborer Class.

128.    Plaintiffs and the Manual Laborer Class members were entitled to be paid within seven calendar days after the end of the week in which these wages were earned pursuant to NYLL §191.

129.    Defendants maintained a policy to pay its manual labor workers bi-weekly, which violates the frequency requirements of NYLL §191(1)(a). By failing to pay wages to Plaintiffs and

the Manual Laborer Class on a weekly basis, Defendants are in violation of NYLL §191(1)(a) and the Plaintiffs and the Manual Laborer Class have suffered actual injuries and were underpaid.

130.    Due to Defendants' violations of NYLL §191(1)(a), Plaintiffs and the Manual Laborer Class are entitled to recover from Defendants the amount of their untimely paid wages as liquidated damages, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest as provided for by NYLL §198.

## AS AND FOR A FOURTH CAUSE OF ACTION
New York Labor Law – Failure to Provide Accurate Wage Statements and Pay Rate Notices
(Brought on behalf of Plaintiffs and the New York Class)

131.    Plaintiffs allege on behalf of themselves and all others similarly situated as New York Class members and incorporate by reference the allegations in paragraphs 1 through 130 above as if set forth fully and at length herein.

132.    Defendants failed to supply Plaintiffs and the New York Class with a pay rate notice at the commencement of their employment and/or at any time their pay rate changed, and further failed to supply accurate wage statements with every payment of wages as required by NYLL, Article 6, §195(3), listing the following information: dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked per week, including overtime hours worked if applicable; deductions; and net wages.

133.    As a result of Defendants' violation of NYLL § 195(3), Plaintiffs and the New York Class are entitled to statutory penalties of two hundred fifty dollars for each workday that Defendants failed to provide them with accurate wage statements, or a total of five thousand dollars

24

each, as well as reasonable attorneys' fees and costs as provided for by NYLL, Article 6, §198.

134.    As a result of Defendants' violation of NYLL § 195(3), Plaintiffs and the New York

Class members are entitled to statutory penalties of two-hundred-fifty dollars for each workday that

Defendants failed to provide them with pay rate notices, or a total of five-thousand dollars each, as

well as reasonable attorneys' fees and costs.

**AS AND FOR A FIFTH CAUSE OF ACTION**
Retaliation Against Plaintiff for Engaging in Protected Activity
(Brought on behalf of Plaintiff Eldridge)

135.    Plaintiff Eldridge re-alleges and incorporates by reference the allegations set forth in

paragraphs 1 through 134, above as if fully set forth herein.

136.    The FLSA applied to Eldridge's employment with Defendants at all times relevant

herein.

137.    Eldridge engaged in protected activity when he complained to Defendants about

Defendants' failure to properly compensate him for overtime hours, in violation of the FLSA.

138.    Almost immediately after Eldridge complained of the Defendants' wage violations,

Eldridge was informed that he was terminated.

139.    Defendants' adverse employment action constituted a retaliatory action, undertaken in

direct response to Eldridge assertion of workplace rights protected by the FLSA.

140.    There was a causal connection between Eldridge's complaints and the materially

adverse actions taken against Eldridge by the Defendants.

141.    As a direct, foreseeable, and proximate result of Defendants' actions, specifically

Eldridge's termination, Eldridge has suffered a loss of earnings and job benefits; Eldridge has

suffered and continues to suffer emotional distress; and has incurred and continues to incur expenses.

142.    Defendants committed the acts herein maliciously, fraudulently, and oppressively

with the wrongful intent to injure Eldridge. The acts taken towards Elridge were carried out by Defendants with a conscious disregard for Eldridge's rights, acting in deliberate, callous, and intentional manner with a desire to injure and damage.

143.    The Defendants retaliated against Eldridge for engaging in protected activity in violation of 29 U.S.C. § 215(a)(3).

144.    Pursuant to FLSA, 29 U.S.C. § 216(b), Eldridge is entitled to legal and equitable relief including compensatory and punitive damages, as well as reasonable attorney's fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually, and on behalf of all other similar persons, respectfully request that this Court grant the following relief:

A.    Certification of this case as a collective and class action pursuant to the FLSA and Rule 23 of the Federal Rules of Civil Procedure and 29 U.S.C. §216(b);

B.    Designation of Plaintiffs as representative of the NY Rule 23 Class and counsel of record as Class Counsel;

C.    Declare Defendants (including their overtime wage payment policy and practices) to be in violation of Plaintiffs' rights and those similarly situated, under the FLSA and New York Labor Law, and enjoin Defendants from engaging in such violations;

D.    As to the First Cause of Action, award Plaintiffs and the Primary Class members, their unpaid overtime wage compensation due under the FLSA, together with maximum liquidated damages, costs and attorney's fees pursuant to 29 USC § 216(b);

E.    As to the Second Cause of Action, award Plaintiffs and the New York Class members, their unpaid straight and overtime pay due under the NYLL § 663 and New York Minimum Wage Act and the Regulations thereunder including 12 NYCRR § 142-2.2, 2.4, together

26

with maximum liquidated damages, prejudgment interest, costs, and attorneys' fees.

   F. As to the Third Cause of Action, award Plaintiffs and the Manual Laborer Class members, maximum recovery for violations of NYLL §191(1)(a), as liquidated damages, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest as provided for by NYLL §198.

   G. As to the Fourth Cause of Action, award Plaintiffs and the New York Class members, maximum recovery for violations of NYLL §195(3), as liquidated damages, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest as provided for by NYLL §198.

   H. As to the Fifth Cause of Action, award Plaintiff Eldridge maximum recovery for violations of his rights based on his retaliatory termination pursuant to FLSA, as legal and equitable relief including compensatory and punitive damages, as well as reasonable attorney's fees and costs.

   I. Award Plaintiffs, and all others similarly situated where applicable, any relief requested or stated in the preceding paragraphs, but which has not been requested in the "WHEREFORE" clause or "PRAYER FOR RELIEF", in addition to the relief requested in the wherefore clause/prayer for relief.

   J. Such other relief as this Court shall deem just and proper.

Dated: New York, New York
   July 30, 2024

        **BOYD RICHARDS PARKER & COLONNELLI, P.L.**
        *Attorneys for Plaintiffs*

        /s/ *Jacqueline L. Aiello*
        Jacqueline L. Aiello, Esq.
        Nicholas P Iannuzzi, Esq.
        1500 Broadway, Suite 505
        New York, New York 10036
        212-400-0626